## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael L. Schlief,

      Plaintiff / Counterclaim Defendant,

vs.

Nu-Source, Inc.,

      Defendant / Counterclaim Plaintiff.

Civil No. 10-04477 (DWF/SER)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS**

## INTRODUCTION

Since filing his Complaint on November 1, 2010, Plaintiff Michael L. Schlief ("Plaintiff") has brought two motions before this Court based on the *pleadings*. Taken together, the motions ask that the Court place Defendant Nu-Source, Inc. ("Nu-Source") in a rather precarious position. One motion seeks to deprive Nu-Source of its shield, requesting that several of Nu-Source's defenses "be stricken and dismissed entirely and on the merits." The other motion, which is presently before this Court, attempts to remove Nu-Source's sword, asking that the Court dismiss all of Nu-Source's counterclaims. Counsel submits that this is not the proper aim of federal motion practice, and this Court should not allow itself to be conscripted in such a fashion.

125106.4

Plaintiff's Motion to Dismiss or For Summary Judgment[1] on Defendant's Counterclaims ("Motion to Dismiss") should be denied because the allegations contained in Nu-Source's Answer and Counterclaims set forth a cogent and highly "plausible" claim for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, civil theft and other related claims. Plaintiff's Motion to Dismiss, by contrast, makes arguments and factual assertions which should not even be raised until at least the summary judgment phase of the case, and which Nu-Source expects to defeat at that time, based on the factual record.

As to Nu-Source's breach of contract claims, Plaintiff's primary argument is that Plaintiff's Employee Agreement / Noncompete ("Agreement") containing non-competition, non-disclosure and bailment provisions cannot be enforced by Nu-Source because they are not adequately plead under the pleading standard articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). But, Nu-Source properly alleges that the Agreement is "a valid and binding

---

[1] Plaintiff submits the Affidavit of Plaintiff Michael L. Schlief, arguing that "even if the few facts pled by [Nu-Source] are sufficient to state a claim, summary judgment is nevertheless appropriate on all of [Nu-Source]'s Counterclaims. (Pl.'s Mem. 2.) Fed. R. Civ. P. 12(b)(6) provides that when "matters outside the pleadings are presented to and not excluded by the court" on a motion to dismiss, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" Nevertheless, the court has discretion not to consider matters beyond the pleadings when ruling on a motion to dismiss. See Casazza v. Kiser, 313 F.3d 414, 418 (8th Cir. 2002). Given the early stage of this litigation, Nu-Source requests that the Court not consider material outside the pleadings. Nevertheless, in the event material outside the pleadings is considered, Nu-Source submits the Affidavit of Herb Dunphy to show that there are genuine issues of material fact precluding summary judgment. Fed. R. Civ. P. 56(c). Mr. Dunphy's affidavit also shows the need for additional discovery regarding Plaintiff's business activities. See Fed. R. Civ. P. 56(d).

contract" and that Plaintiff breached his obligations under the Agreement's non-competition, non-disclosure and bailment provisions.

Moreover, there are a number of additional claims in the case that do not depend upon the Agreement itself. Plaintiff owed Nu-Source both common law and statutory duties, and Nu-Source properly alleges violations of those duties. Plaintiff's arguments for dismissal of the tort and statutory claims fail as well, for a variety of reasons. First, the Supreme Court's decisions in Twombly and Iqbal have not converted the notice pleading standard of Fed. R. Civ. P. 8 into a requirement that all relevant evidence be fully and minutely delineated in a complaint or counterclaim. Second, Plaintiff relies on unsupported factual assertions (such as the claim that he did not take certain information and that even if he did that information could not possibly be a trade secret) that are completely inappropriate at this stage of the litigation and that will be shown, at the proper time, to be incorrect.

Under Rule 8, and the Supreme Court's standard for Rule 12(b)(6) motions as discussed in Twombly and Iqbal, Nu-Source has pled viable claims against Plaintiff. Accordingly, Plaintiff's Motion to Dismiss should be denied in its entirety.

## ANALYSIS

### I.   NU-SOURCE'S COUNTERCLAIMS SATISFIES ALL APPLICABLE PLEADING STANDARDS.

Contrary to Plaintiff's implication, the Supreme Court's recent decisions in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) and Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 556 (2007) have neither eliminated notice pleading, nor reconstituted 19th century concepts of "Code pleading."

To defeat a Rule 12(b)(6) motion, a claimant need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Iqbal, 129 S. Ct. at 1949 (quotations omitted), a court cannot grant a motion to dismiss for failure to state a claim "even if it strikes a savvy judge that . . . recovery is very remote and unlikely," Twombly, 550 U.S. at 556. Instead, as long as the pleadings suggest a "plausible" scenario to "sho[w] that the pleader is entitled to relief," a court may not dismiss a complaint. Id. at 557 (alteration in original). The plausibility standard is not akin to a "probability requirement." Iqbal, 129 S. Ct. at 1949. As Iqbal recognizes, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citation omitted). On a motion to dismiss, the court generally only considers the pleadings, but may consider "some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008).

Nu-Source's claims easily meet the standards of Iqbal and Twombly. Under Iqbal and Twombly, "Rule 8 does not . . . require a plaintiff to plead 'specific facts' explaining precisely how the defendant's conduct was unlawful." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595 (8th Cir. 2009) (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per

curiam)). "Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Id. (quotation omitted). The claimant need only "allow [ ] the court to draw the reasonable inference" that the claimant is entitled to relief. Id. (quoting Iqbal, 129 S. Ct. at 1949) (alteration in original). Furthermore, on a Rule 12(b)(6) motion to dismiss, courts operate on the "assumption that all of the allegations in the complaint are true," Twombly, 550 U.S. at 555-56, and "inferences are to be drawn in favor of the non-moving party." Braden, 588 F.3d at 595.

In Braden, the Eighth Circuit reversed the district court's grant of a motion to dismiss because the court "ignored reasonable inferences supported by the facts alleged," and also "drew inferences in [the moving party's] favor, faulting [the non-moving party] for failing to plead facts tending to contradict those inferences." Id. The Supreme Court's decisions in Iqbal and Twombly do not change these fundamental principles. Id.

If Nu-Source's allegations against Plaintiff are accepted as true at this stage (as they must be), its claims more than satisfy the Twombly/Iqbal standard.

## II.   NU-SOURCE'S HAS PLED VIABLE BREACH OF CONTRACT CLAIMS.

To state a claim for breach of contract,[2] claimant must allege: (1) the existence of the contract; (2) its breach; and (3) resulting damages. Graham v. Asbury, 540 P.2d 656, 657 (Ariz. 1975). "The terms of the contract must be established with sufficient specificity that the obligations involved may be ascertained." Coleman v. Watts, 87 F.

---

[2] Defendant agrees that the Agreement should be construed in accordance with the laws of Arizona. (Dkt. 20, Pl.'s Mem. 8, n.1.)

Supp. 2d 944, 955 (D. Ariz. 1998) (citing Savoca Masonry Co. v. Homes & Son Constr. Co., 542 P.2d 817, 819 (Ariz. 1975)).  Here, Plaintiff does not dispute that Nu-Source properly alleged facts establishing the first[3] and third[4] elements.  Instead, Plaintiff argues that Nu-Source has plead insufficient facts to establish Plaintiff's breach of the parties' contract by "(a) misappropriating and using Defendant['s] trade secrets and confidential information to start a competing business d/b/a Superior Sales and Service, (b) converting or destroying property owned by Defendant, and (c) operating a business d/b/a Superior Sales and Service, which competes with Defendant."  (Dkt. 20, Plaintiff's Mem. 8.)

### A.   Nu-Source States a Claim for Breach of Plaintiff's Contractual Obligations Related to Confidential Information.

Plaintiff's contractual obligations related to the protection of confidential information are set forth in the Agreement:

> **8.   Confidential Information:**      Tra[d]e Secrets and Proprietary Matters: EMPLOYEE shall not, during the term of this Agreement, any renewal thereof and at any time thereafter divulge, furnish or make accessible to anyone or use in any way (other than in the ordinary course of the business of Corporation or manufacturers represented by Corporation) any confidential or secret knowledge or information which EMPLOYEE has acquired or become acquainted with or will acquire or become acquainted with prior to the termination of this Agreement and any renewal

---

[3] Indeed, Plaintiff is estopped from arguing the Agreement is unenforceable given his own actions in accepting the benefits of it and asserting claims against Nu-Source under it.  Total Petroleum, Inc. v. Davis, 822 F.2d 734, 737 (8th Cir. 1987) (holding that equitable estoppel prevents "a party who has full knowledge of the facts from accepting the benefits of a transaction, contract, or order and subsequently taking an inconsistent position to avoid corresponding obligations").

[4] Indeed, Nu-Source is not required to prove its damages at this stage.  The allegations of damages as pled by Nu-Source are sufficient for Rule 12 purposes.  See, e.g., Assoc. Comm. Fin., Inc. v. Brady Martz & Assoc., 2005 WL 2250765, at *3 (D. Minn. 2005) (citing Hafley v. Lohman, 90 F.3d 264, 267 (8th Cir. 1996) (noting that whether a claimant will prevail at trial is irrelevant to a Rule 12(b)(6) motion)).

thereof, whether developed by himself or by others and whether concerning and trade secrets, confidential or secret designs, processes, formulas, plans, devices sources or material (whether or not patented or paten able) of Corporation or manufacturers represented by Corporation or any manufacturer which Corporation represents directly or indirectly, useful in any aspect of the business of Corporation or manufacturers represented by Corporation; *any confidential customer, principal or supplier list of Corporation or secret development of research work of Corporation; or manufacturers represented by Corporation and any manufacturer which Corporation or any manufacturer represented by Corporation represents*; or any other confidential or secret aspect of the business of Corporation or manufactures represented by the Corporation.

EMPLOYEE acknowledges that the above described knowledge or information constitutes a unique and valuable asset of Corporation or manufacturers represented by Corporation acquired at great time and expense by Corporation or manufacturers represented by Corporation, which is secret and confidential and which will be communicated to EMPLOYEE in confidence in the course of his duties hereunder and that any disclosure or other use of such knowledge or information other than for the sole benefit of Corporation would be wrongful and would cause irreparable harm to Corporation. Both during and after the term of this Agreement, EMPLOYEE will refrain from any acts or omissions that would reduce tile value of such knowledge or information to Corporation or manufacturers represented by Corporation. At any time, if requested by Corporation or manufacturers represented by Corporation, EMPLOYEE shall surrender to Corporation or manufactures represented by Corporation any or all confidential information and all records, files and other documents provided to Independent Contractor by Corporation or manufacturers represented by Corporation and all copies thereof, related to such confidential information.

(Dkt. 2, Answer & Counterclaims ¶ 4, Ex. A at 6-7 (emphasis added).) Nu-Source

alleges that on April 27, 2010, Plaintiff brought Nu-Source's computer, which included

confidential computer data as defined by Section 8 of the Agreement, to RB's Computer

Service, Inc. to have the computer's contents copied onto a hard drive supplied by

Plaintiff. (Id. ¶ 7.) The invoice makes no mention of a computer virus. (Id., Ex. B.)

Less than two months later, Plaintiff filed to do business under the assumed name of

Superior Sales & Service, 19448 Upland Street NW, Elk River, Minnesota, 55330. (Id. ¶ 8.) Nu-Source also alleges that in January 2010, Plaintiff solicited pricing information from one of its vendors, FilterSource.com, for what Plaintiff characterized as a "non Nu-Source order." (Id. at ¶ 6.)

Plaintiff argues that Nu-Source's claim fails because it "alleges no facts which show that the information on the computer was confidential or included trade secrets." (Dkt. 20, Pl.'s Mem. 9.)  This is not accurate.  First, Nu-Source alleges that the computer given to RB's Computer Service contained confidential data.   (Dkt. 2, Answer & Counterclaims ¶ 7.)  Second, to establish a breach of Section 8 of the Agreement, Nu-Source does not have to prove the existence of a trade secret.  Plaintiff argues at length that Nu-Source's breach of contract claim fails because it fails to identify the trade secret, if any, with "sufficient particularity," (Dkt. 20, Pl.'s Mem. 9), but Plaintiff confuses a breach of contract with a claim for misappropriation of trade secrets.  As demonstrated above, Section 8 of the Agreement is not so limited.  (See, e.g., Id., Ex. A at 6 ("EMPLOYEE shall not, . . . furnish or make accessible to anyone or use in any way . . . any confidential customer, principal or supplier list of Corporation or secret development of research work of Corporation.").  Thus, Nu-Source has pled ample facts to state a claim for breach of the Agreement's confidentiality provision.  Accordingly, Plaintiff's Motion to Dismiss on this point should be denied.

**B.**      **Nu-Source Properly States a Claim for Breach of Plaintiff's Obligations Related to Bailment of Nu-Source Property.**

Plaintiff's contractual obligations related to the bailment of Nu-Source property are set forth in the Agreement:

> EMPLOYEE acknowledges, promises and agrees that the property set forth in Exhibit "D", which EMPLOYEE acknowledges is in his possession, is the property of the Corporation and is of the value as nest forth on Exhibit "D" and EMPLOYEE is indebted to and liable to Corporation for the value of the property in the event it is lost, [s]tolen, destroyed, converted or is not returned immediately to Corporation upon request in the same condition as when tender[ed] to EMPLOYEE.

(Id., Ex. A at 16.)   Plaintiff alleges Nu-Source's allegations are insufficient because "[Plaintiff]'s act of copying the contents of the computer onto a hard drive before reformatting the machine in no way destroyed the information." (Dkt. 20, Pl.'s Mem. 12.)  Again, Plaintiff's reasoning is based on a truncated reading of the Agreement and the faulty premise that Plaintiff returned all of Nu-Source's computer data.

First, violating the Agreement is not contingent, as Plaintiff contends, on the Plaintiff "destroying" the Nu-Source computer.  As the Agreement makes clear, Plaintiff breaches his obligation under the bailment provision if he fails to return the property "in the same condition as when tender[ed] to EMPLOYEE." (Dkt. 2, Answer & Countercls., Ex. A at 16.)  Here, Plaintiff was given a working computer and he returned a computer with no memory.  (Id. ¶ 7.)  Indeed, the invoice from RB's Computer shows that Plaintiff was not concerned with restoring the computer to its working condition.  According to the invoice, "Customer will install windows and all drivers on laptop does not want this completed in shop." (Id., Ex. B.)  Thus, Nu-Source has pled ample facts to state a claim for breach of the Agreement's confidentiality provision.  Accordingly, Plaintiff's Motion to Dismiss on this point should be denied.

**C.     Nu-Source States a Claim for Breach of Plaintiff's Obligations Related to his Non-Compete.**

"As a general rule, a contract restricting the right of an employee to compete with an employer after termination of employment 'which is not unreasonable in its limitations should be upheld in the absence of a showing of bad faith or of contravening public policy.'" Fearnow v. Ridenour, Swenson, Cleere & Evans, P.C., 138 P. 3d 723, 725 (Ariz. 2006) (quoting Lassen v. Benton, 346 P.2d 137, 140 (Ariz. 1959), modified on other grounds, 347 P.2d 1012 (Ariz. 1959)).  Plaintiff alleges that he did not violate the Agreement because it is limited by its terms to the State of Arizona.

The Agreement provides:

**9.     Restrictive Covenant:**

(A)     EMPLOYEE covenants and agrees that during the period of twenty-four (24) months following the termination of this Agreement and any renewal thereof, regardless of the cause of such termination, he will not, directly or indirectly, (whether as officer, employee or in any other capacity as principal or agent or through any person, subsidiary, affiliate or employee, acting as nominee or agent) own, manage, operate, join, control or participate in any business under any name similar to the Corporation's and will not in any such manner, directly or indirectly, compete with the Corporation or become interested in or employed by competitor of the Corporation, and further will not conduct, engage in, be interested in or associated with any person or entity involved in any of the following prohibited activities within the sales territory assigned to EMPLOYEE by Corporation.

(B)     The direct or indirect promotion, sale or sales administrating of any product or product lines of a manufacturer which Corporation represented while EMPLOYEE was engaged with Corporation or any product or product lines of a manufacturer which Corporation represents at the time of termination of this agreement any renewal thereof or had represented at any time while EMPLOYEE was with Corporation, or of any competitor or Corporation.

(C)   The solicitation, acceptance or placement of purchase orders or contracts of sale for any product or product lines of manufacturer which Corporation represented at the time of termination or had represented at any time while EMPLOYEE was under contract with Corporation, or of a competitor of Corporation.

(D)   The attempt in any way to effect the discontinuance of any Corporation's business dealings with any manufacturer which Corporation currently represents and which Corporation may represent in the future.

(E)   The solicitation or the attempt to influence or interfere with any person, employee, agent or independent contractor of Corporation or person doing business with Corporation, or in any way negatively affect the business relationship existing between Corporation and any such party, including prospective customers of Corporation is limited to the State of Arizona

(F)   The [s]olicitation, selling, or delivering of any services or products to any person or persons, who shall have been or may be prospective customers of Corporation who shall have been and/or whose addresses became known to EMPLOYEE in any manner during the existence of this Agreement.

(G)   The soliciting, diverting, or taking away or attempting to solicit, divert, or take away any of the customers, business or patronage of such customers as were served by Corporation or may prospectively be served by Corporation in the aforesaid Territory during the period of this Agreement and whose names and/or addresses EMPLOYEE learned during such period or thereafter.

(H) The engaging in the business of manufacturing, assembly, repackaging, distribution of any supplies, or products represented by Corporation, or in competition with Corporation.

(I)   The parties hereto acknowledge that the period and area of restriction imposed herein is fair and reasonable an is reasonably required for the protection of Corporation. In the even that any or part of the foregoing restrictive covenant shall be unenforceable or invalid, the remaining parts thereof shall nevertheless continue to be valid and enforceable as though the invalid portions were not a part hereof. In t[h]e event that any of the provisions of the foregoing

relating to the period of area of restriction shall be deemed to exceed the maximum period of time or area which a court of competent jurisdiction would deem enforceable, the time or area for the purpose of this paragraph shall be deemed to be the maximum time period or are which a court of competent jurisdiction would deem valid or enforceable in any state in which such court of competent jurisdiction shall be convened.

(J)     The area of restriction imposed herein shall be null and void and not enforceable in the event that Herb Dunphy and Shelley Dunphy sell Nu-Source, Inc and are no longer employed by or Nu-Source, Inc. or employed by the new controlling company. The area of restriction imposed herein shall be enforceable if Herb Dunphy or Shelley Dunphy remain employed by the company purchasing or taking over Nu-Source, Inc.

(Dkt. 2, Answer & Countercls., Ex. A at 8-11.)

Plaintiff correctly notes that part of the Agreement appears to limit its application to Arizona. In the definition section of the Agreement, the term "Territory" is defined by reference to Exhibit A of the Agreement. (Id., Ex. A at 1.) In Exhibit A of the Agreement, "Territory" is defined to include: "Arizona All products sold by Nu-Source, Inc." (Id., Ex. A at 18.). However, this capital "T" Territory is refers to the Compensation section of the Agreement and not the Restrictive Covenant section. Specifically, the Compensation section provides:

1.     **Compensation:** With respect to order of Products sold by EMPLOYEE in the *Territory* to all new Customers generated in *Territory* due to direct sales efforts from Employee in the *Territory*. Customers as accepted an[d] approved by the Corporation during the term of this Agreement, the compensations earned thereby and payable from Corporation to the EMPLOYEE shall be entitled to a commission as reflected in Exhibit "C" attached hereto. . . .

(Id., Ex. A at 4. (emphasis added).)

In contrast, the non-compete provisions prohibit competition in the "sales territory assigned" to Plaintiff.   Here, it is at least ambiguous whether the "sales territory assigned" includes New York and Minnesota because, as Plaintiff alleges in his Complaint, he was working in these states and earning (but Nu-Source was allegedly not always paying) commissions on sales in these regions.  (Dkt. 1, Compl. ¶¶ 9, 15, 16, 17.) Nevertheless, even accepting Plaintiff's truncated reading of the Paragraph (A) of the Restrictive Covenant section, other provisions of the Restrictive Covenant section are not limited by a specific territory.   For example, Paragraph (C) prohibits: "solicitation, acceptance or placement of purchase orders or contracts of sale for any product or product lines of manufacturer which Corporation represented at the time of termination." (Dkt. 2, Answer & Countercls., Ex. A at 9.)   Similarly, Paragraph (H) prohibits: "The engaging in the business of manufacturing, assembly, repackaging, distribution of any supplies, or products represented by Corporation, or in competition with Corporation." (Id., Ex. A at 10.)

Thus, Plaintiff has stated a plausible claim for breach of Plaintiff's non-competition obligations under the Agreement because even if the Court limits the scope of Paragraph (A) of the Restrictive Covenant section to Arizona, by operating a web site located at www.superiorsalesandservice.net and offering competing goods for sale, because other paragraphs do not contain a territorial limitation.   Furthermore, Nu-Source's claims are not as simple as Plaintiff's creation of a website violated the parties' noncompete agreement; rather, by operating a website that "offers for sale to anyone who places an order," (Dkt. 2, Answer & Countercls. ¶ 9), including customers in Arizona.

Even if Plaintiff sold no product, Nu-Source is entitled to an injunction preventing the competition. By alleging that Plaintiff actively solicited customers in the protected area – assuming, of course, that the court limits the scope of the noncompete to Arizona – Nu-Source has pled ample facts to state a claim for breach of the Agreement's noncompete provisions. Accordingly, Plaintiff's Motion to Dismiss on this point should be denied.

## III.   NU-SOURCE'S OTHER CLAIMS ARE ALSO VIABLE AND PROPERLY PLED.

### A.   Nu-Source Has Adequately Pled A Valid Claim for Breach of the Duty of Loyalty and the Duty of Confidentiality.

In Minnesota, "while employed, an employee has a duty of loyalty to the employer and is prohibited from soliciting the employer's customers for the employee's own business or otherwise competing with the employer." Tappe Const. Co. v. Siedow, 2001 WL 1646653, at *4 (Minn. Ct. App. Dec. 26, 2001) (citing Rehab. Specialists, Inc. v. Koering, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987). "An employer may recover damages or withhold the payment of wages in the event of a breach of this duty." Stephen F. Befort, 17 Minnesota Practice, Employment Law, § 13.31 (2d ed. 2003).

Additionally, employees have a common law duty of confidentiality or a duty not to use trade secrets or confidential information obtained from their employer. Eaton Corp. v. Giere, 971 F.2d 136, 141 (8th Cir. 1992) (employee breached duty of loyalty where he solicited employer's business while still employed and breached duty of confidentiality by disclosing confidential information obtained from employer). Whether an employee's actions constitute a breach of a duty is a question of fact to be determined based on all the circumstances of the case. Rehab. Specialists, 404 N.W.2d at 305 (citing

<u>Sanitary Farm Dairies, Inc. v. Wolf</u>, 112 N.W.2d 42, 48 (Minn. 1961)). Here, Nu-Source alleges facts that, accepted as true, state a plausible claim that Plaintiff violated his common law duties of loyalty and confidentiality.

Nu-Source's alleges the following wrongful actions: (a) Prior to Plaintiff's separation in July 2010, "Plaintiff solicited pricing information from a Nu-Source supplier, FilterSource.com, for what Plaintiff called a "non Nu-Source order.". . . direct[ing] the supplier to respond to the Plaintiff's non Nu-Source email, <u>mikeschlief@gmail.com</u>," (Dkt. 2, Answer & Countercls. ¶ 6.); (b) Prior to Plaintiff's separation in July 2010, Plaintiff transferred the contents of his Nu-Source computer to a personal hard drive, (<u>Id.</u> ¶ 7); (c) Prior to Plaintiff's separation in July 2010, Plaintiff began operating a web site located at <u>www.superiorsalesandservice.net</u> where he offered for sale products similar to those of Nu-Source, (<u>Id.</u> ¶ 9); and (d) By using Nu-Source's confidential information to start a competing business and retaining that information following his termination, (<u>Id.</u> ¶¶ 10, 20.)

Plaintiff attempts to cast these allegations in best light possible, arguing that Plaintiff was purchasing filters for his parents, not a client, that Plaintiff was engaged in merely prepatory activities and not direct competition. (Dkt. 20, Pl.'s Mem. 16-18.) That may be, but at this stage, Nu-Source's allegations need only "allow [ ] the court to draw the reasonable inference" that the plaintiff is entitled to relief. <u>Braden</u>, 588 F.3d at 585 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). Courts operate on the "assumption that all of the allegations in the complaint are true," <u>Twombly</u>, 550 U.S. at 555-56, and "inferences are to be drawn in favor of the non-moving party." <u>Braden</u>, 588 F.3d at 595.

The above allegations all provide sufficient facts to state a plausible breach of Plaintiff's duty of loyalty and confidentiality, either on the basis of competing prior to his termination of employment or his misappropriation of confidential information. Nu-Source provides far more specificity than mandated by the Iqbal and Twombly standards, which do not even require "detailed factual allegations" or "specific facts." See Gregory v. Dillard's, Inc., 565 F.3d 464, (8th Cir. 2009) (quoting Twombly and Erickson v. Pardus, 551 U.S. 89 (2007)). Thus, Plaintiff's attempt to dismiss this claim should be denied.

**B.      Nu-Source Stuff Has Adequately Pled A Valid Claim Under the Minnesota and Arizona Uniform Trade Secrets Act.**

Plaintiff challenges Nu-Source's claim under the Minnesota Uniform Trade Secrets Act ("MUTSA") or the Arizona Uniform Trade Secrets Act ("AUTSA") claim on two grounds: first, he alleges that Nu-Source does not plead that he has or is using any specific confidential information or trade secrets; and second, he contends Nu-Source has not identified specific information that is confidential and has not specifically identified any trade secrets taken by Plaintiff. Both arguments fail.

Nu-Source has stated a plausible claim that Plaintiff has misappropriated its trade secrets. In its Answer and Counterclaims, Nu-Source specifically alleges that before the time of his termination, Plaintiff copied his company computer's entire hard drive, which included trade secrets and other confidential information. (Dkt. 2, Answer & Countercls. ¶¶ 7, 29.) Nu-Source even identifies specific items that were among the trade secrets that it believes were copied and/or downloaded: Nu-Source's customer lists and sensitive

pricing information.  (Id. ¶ 29.)  Nu-Source specifically alleges that Plaintiff wrongfully retained and/or used "the information to start a competing business d/b/a Superior Sales & Service as early as June 2010."  (Id. ¶ 10.)

Plaintiff takes issue with the fact that Nu-Source has not described "how the information – whatever it is – is not generally known, how the information derives economic value, or how [Nu-Source] made efforts to maintain secrecy."  (Dkt. 20, Pl.'s Mem. 19.)  Plaintiff then admits that Nu-Source asserts that its trade secrets include customer lists and price lists, but insists that these are not trade secrets and they are not afforded protection under the MUTSA or AUTSA.  (Id. at 20)

Plaintiff entirely misconstrues the purpose and scope of a Rule 12 motion. Plaintiff is arguing facts outside of the pleadings, but all facts in Nu-Source's counterclaims are assumed to be true.  Cases Plaintiff cites on this point – including Lasermaster Corp. v. Sentinel Imaging, 931 F. Supp. 628 (D. Minn. 1996) and NewLeaf Designs, LLC, 168 F. Supp. 2d 1039 (D. Minn. 2001) – examined customer lists at the preliminary injunction phase, not at the pleading phase.  Plaintiff's other cited case, Widmark v. Northrup King Co., 530 N.W.2d 588 (Minn. Ct. App. 1995), was decided at the *summary judgment* stage.  In many contexts, customer lists and similar information are indeed trade secrets.  See, e.g., Surgidev Corp. v. Eye Technology, Inc., 648 F. Supp. 661 (D. Minn. 1986); Amex Distributing Co., Inc. v. Mascarik, 724 P.2d 596, 602 (Ariz. Ct. App. 1986) (holding that where customer information is truly confidential, it may be given measure of protection accorded to trade secrets.)  The specific factual inquiries

necessary to distinguish between what is and is not a trade secret are far beyond the scope of a Rule 12 motion.

Of course, Nu-Source has not in any way limited its trade secret claim to customer lists. It also alleges misappropriation of confidential pricing data. (Dkt. 2, Answer & Countercls. ¶ 29.) Moreover, Nu-Source is not required to identify the specific content of all of its trade secrets at this stage: "the exact nature of the trade secret is a matter for discovery." SL Montevideo Technology, Inc. v. Eaton Aerospace, LLC, 292 F. Supp. 2d 1173, 1179 (D. Minn. 2003) (denying Rule 12 motion to dismiss a MUTSA claim).

When the merits of the evidence are being assessed, Plaintiff will be free to argue that he does not possess any Nu-Source information that may be considered proprietary or confidential, and Nu-Source has not been harmed by any actions taken by his actions. But at this stage, Nu-Source has alleged otherwise in its Answer and Counterclaims, and the facts in the Counterclaim are assumed to be true. Plaintiff can try to develop evidence to support his argument, just as Nu-Source will have the opportunity to develop facts to the contrary. However, Plaintiff's Motion to Dismiss on this claim should be denied.

**C.    Nu-Source Has Adequately Pled A Valid Claim for Civil Theft Pursuant to Minn. Stat. § 604.14.**

Section 604.14 imposes civil liability for theft of property:

A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater.

Minn. Stat. § 604.14, subd. 1.

Plaintiff argues that Nu-Source's civil theft claim under § 604.14 must be dismissed because Nu-Source's "only allegation is that Schlief copied Defendant's computer data onto an external hard drive." (Dkt. 20, Pl.'s Mem. 18.) This is false. Nu-Source alleges that "Plaintiff instructed RB's Computer Service, Inc. in Elk River, Minnesota to copy all of the computer's data, including confidential company data, onto an external hard drive supplied by the Plaintiff." (Dkt. 2, Answer & Countercls. ¶ 24.) Nu-Source also alleges that Plaintiff's retained the data and "used the information to start a competing business d/b/a Superior Sales & Service as early as June 2010." (Id. ¶ 10.) Nu-Source also alleges that Plaintiff "

Plaintiff also makes several arguments based on facts that are plainly outside of the pleadings. Because entertaining Plaintiff's arguments would require consideration of facts outside the Answer and Counterclaims, it is therefore not an appropriate basis for dismissal. Thus, Plaintiff has sufficiently stated a claim for civil theft under Minn. Stat. § 604.14.

**D.    Nu-Source Has Adequately Pled A Valid Claim For Unfair Competition and Unjust Enrichment.**

In Minnesota, "[i]n order to pursue a claim for unfair competition, a plaintiff must identify the underlying tort that is the basis for the claim." Guy Carpenter & Co., Inc. v. John B. Collins & Associates, Inc., Civ. No. 05-1623 (JRT/FLN), 2006 WL 2502232, at *8 (D. Minn. 2006) (internal citations and quotations omitted). As to a claim for unfair competition, "a plaintiff must identify the underlying tort that is the basis for the claim." Id. at *9 (citation omitted).

With regard to its claim for unjust enrichment, Nu-Source alleges that Plaintiff was unjustly enriched when he transferred the contents of his Nu-Source computer, which included confidential information and trade secrets, to a personal hard drive for his own benefit. (Dkt. 2, Answer & Countercls. ¶¶ 7, 29, 32, 33.) Plaintiff appears to take issue with Nu-Source prefacing its allegation with "on information and belief." (Dkt. 20, Pl.'s Mem. 23.) But, courts have recognized that the "Supreme Court did not strike [information and belief] from the lexicon when it made the pleading rules more demanding," Smith v. Harvey, No. 08-CV-0816, 2010 WL 1292473, at *4 (N.D. Ill. March 29, 2010), and Plaintiff fails to cite any authority that allegations made on information and belief are impermissible under Rule 8(a).

As to its claim for unfair competition, the same wrongful conduct alleged for its unjust enrichment claim serves as the basis for its unfair competition claim. Moreover, disloyal conduct of an employee, such as the conduct alleged in Nu-Source's duty of loyalty claim, may serve as the basis for Nu-Source's unjust competition claim. Thus, the Court should deny Plaintiff's Motion to dismiss on this claim.

### E.   Nu-Source Has Adequately Pled a Valid Claim for Tortious Interference with Contractual and Business Relations.

In Minnesota, the elements of tortious interference with contract are as follows: (1) the existence of a contract, (2) the tortfeasor's knowledge of the contract, (3) the tortfeasor's intentional causation of a breach of the contract, (4) a lack of justification for the tortfeasor's action, and (5) damages resulting from the breach. Storage Technology

Corp. v. Cisco Systems, Inc., 395 F. 3d 921, 924 (8th Cir. 2005) (citing Bouten v.

Richard Miller Homes, Inc., 321 N.W.2d 895, 900 (Minn. 1982)).

Nu-Source alleges that Plaintiff established a competing business with the

assistance of Nu-Source's trade secrets and confidential information. (Dkt. 2, Answer &

Countercls. ¶¶ 9, 15.)   Nu-Source alleges that Plaintiff operated a website selling

competing products (perhaps even during his employment). (Id.) Nu-Source also alleges

that on at least one occasion, Plaintiff attempted to purchase goods from one of its

suppliers (presumably to fill a customer's order).   (Id. ¶ 6.) At a minimum, these facts

are sufficient to state a plausible claim for interference with a prospective business

relationship. See, e.g., Hunt v. University of Minn., 465 N.W.2d 88, 95 (Minn. Ct. App.

1991) ("To establish a claim of tortious interference with a prospective business

relationship, a plaintiff must prove the defendant intentionally committed a wrongful act

which improperly interfered with the prospective relationship." (citation omitted)).

Accordingly, Plaintiff's Motion to Dismiss this claim should be denied.

## CONCLUSION

Based on the foregoing, the Court should deny Plaintiff's Motion to Dismiss in its

entirety.[5]

---

[5] At a minimum, any order issued by this Court granting any part of Plaintiff's Motion to
Dismiss should grant Nu-Source leave to file an amended counterclaim.

Dated: March 4, 2010.          FELHABER, LARSON, FENLON & VOGT, P.A.

By: s/Grant T. Collins
    Sara Gullickson McGrane, #233213
    Grant T. Collins, #0390654

220 South Sixth Street, Suite 2200
Minneapolis, MN 55402
(612)339-6321
(612)338-0535 (facsimile)

ATTORNEYS FOR DEFENDANT NU-SOURCE,
INC.

125106.4                              22