## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael L. Schlief,                                        Civil No. 10-4477 (DWF/SER)

          Plaintiff,

                                      **MEMORANDUM**
v.                                                      **OPINION AND ORDER**

Nu-Source, Inc.,

          Defendant,

and

Nu-Source, Inc.,

          Counter-Claimant,

v.

Michael L. Schlief,

          Counter-Defendant.

_____

David E. Schlesinger, Esq., and Steven Andrew Smith, Esq., Nichols Kaster, PLLP, counsel for Plaintiff and Counter-Defendant.

Brian T. Benkstein, Esq., Grant T. Collins, Esq., and Sara Gullickson McGrane, Esq., Felhaber, Larson, Fenlon & Vogt, P.A., counsel for Defendant and Counter-Claimant.
_____

## INTRODUCTION

This matter is before the Court on an Amended Motion to Dismiss or for Summary

Judgment on Defendant's Counterclaims (Doc. No. 18) and a Motion to Strike

Affirmative Defenses (Doc. No. 13) brought by Plaintiff and Counter-Defendant

Michael L. Schlief ("Schlief").  For the reasons set forth below, the motions are granted

in part and denied in part.

## BACKGROUND

Defendant and Counter-Claimant Nu-Source, Inc., ("Nu-Source") is an Arizona

corporation in the business of selling various consumable commodities to manufacturers

and other companies, including but not limited to janitorial supplies, safety equipment,

automobile detailing, and office supplies.  (Doc. No. 2, Countercls. ¶ 2.)  Schlief is a

former Nu-Source employee.  (*Id.* ¶ 3.)

In the second half of 2007, Schlief began traveling to New York to work with

Nu-Source's New York customers.  (Compl. ¶ 7.)  Schlief eventually relocated to New

York, where Nu-Source rented a warehouse that included an apartment for Schlief to live

in.  (Doc. No. 2, Answer ¶ 9.)  Schlief alleges that he frequently worked eighteen-hour

days, seven days a week while he was working in New York for Nu-Source.  (Compl.

¶ 11.)[1]  He alleges that during that time he was misclassified as an exempt employee and

is therefore owed unpaid overtime wages for his work in New York.  (*Id.* ¶ 12.)  Schlief

moved to Minnesota in February 2010 and continued to work for Nu-Source.  (*Id.* ¶¶

15-16.)

---

[1]      To provide a more complete factual background to this motion, the Court has
culled facts from both Schlief's Complaint and Nu-Source's Answer and Counterclaims.
However, the Court still views the facts in the light most favorable to Nu-Source, the
non-moving party.

The parties' relationship was governed by a Non-Compete/Employment Agreement ("Agreement") that Schlief signed on or about January 1, 2008.  (Doc. No. 2, Countercls. ¶ 3.)  The Agreement contains the following pertinent provisions:

8.      Confidential Information: Trace [sic] Secrets and Proprietary Matters: EMPLOYEE shall not, during the term of this Agreement, any renewal thereof and at any time thereafter divulge, furnish or make accessible to anyone or use in any way (other than in the ordinary course of the business of Corporation or manufacturers represented by Corporation) any confidential or secret knowledge or information which EMPLOYEE has acquired or become acquainted with or will acquire or become acquainted with prior to the termination of this Agreement and any renewal thereof, whether developed by himself or by others and whether concerning trade secrets, confidential or secret designs, processes, formulas, plans, devices sources or material (whether or not patented or paten able [sic]) of Corporation or manufacturers represented by Corporation or any manufacturer which Corporation represented directly or indirectly, useful in any aspect of the business of Corporation or manufacturers represented by Corporation; any confidential consumer, principal or supplier list of Corporation or secret development of research work of Corporation; or manufacturers represented by Corporation and any manufacturer which Corporation or any manufacturer represented by Corporation represents; or any other confidential or secret aspect of the business of Corporation or manufactures [sic] represented by the Corporation.

. . .

9.      Restrictive Covenant:

(A) EMPLOYEE covenants and agrees that during the period of twenty-four (24) months following the termination of this Agreement and any renewal thereof, regardless of the cause of such termination, he will not, directly or indirectly, (whether as an officer, employee or in any other capacity as principal or agent or through any person, subsidiary, affiliate or employee, acting as nominee or agent) own, manage, operate, join, control or participate in any business under any name similar to the Corporation's and will not in any such manner, directly or indirectly, compete with the corporation or become interested in or employed by competitor of the Corporation, and further will not conduct, engage in, be interested in or associated with any person or entity involved in any of the following

3

prohibited acts within the sales territory assigned to EMPLOYEE by Corporation.

(B) The direct or indirect promotion, sale or sales administrating of any product or product lines of a manufacturer which Corporation represented while EMPLOYEE was engaged with Corporation or any product or product lines of a manufacturer which Corporation represents at the time of termination of this agreement any renewal thereof or had represented at any time while EMPLOYEE was with Corporation, or of any competitor or Corporation.

(C) The solicitation, acceptance or placement of purchase orders or contracts of sale for any product or product lines of manufacturer which Corporation represented at the time of termination or had represented at any time while EMPLOYEE was under contract with Corporation, or of a competitor of Corporation.

. . .

(F) The solicitation, selling, or delivering of any services or products to any person or persons, who shall have been or may be prospective customers of Corporation, or who shall have been and/or whose addresses became known to EMPLOYEE in any manner during the existence of this Agreement.

(G) The soliciting, diverting, or taking away or attempting to solicit, divert, or take away any of the customers, business or patronage of such customers as were served by Corporation or may prospectively be served by Corporation in the aforesaid Territory during the period of this Agreement and whose names and/or addresses EMPLOYEE learned during such period or thereafter.

(H) The engaging in business of manufacturing, assembly, repackaging, distribution of any supplies, or products represented by Corporation, or in competition with Corporation.

. . .

20.    Bailment: EMPLOYEE acknowledges, promises and agrees that the property set forth in Exhibit "D", which EMPLOYEE acknowledges is in his possession, is the property of the Corporation and is of the value as nest [sic] forth on Exhibit "D" and EMPLOYEE is indebted to and liable to Corporation for the value of the property in the event it is lost, stolen,

> destroyed, converted or is not returned immediately to Corporation upon request in the same condition as when tender [sic] to EMPLOYEE.

(*Id.* ¶ 4 & Ex. A.)

On January 18, 2010, while working for Nu-Source in New York, Schlief solicited pricing information from a Nu-Source supplier for what Schlief referred to as a "non Nu-Source order." (*Id.* ¶ 6.) On April 27, 2010, after Schlief had moved to Minnesota, he brought his Nu-Source computer to a computer repair service. The repair service, at Schlief's request, copied the computer's data to an external hard drive and then reformatted the Nu-Source computer. (*Id.* ¶ 7.) Less than two months later, on June 16, 2010, Schlief filed to do business in Minnesota under the assumed name of Superior Sales & Service. (*Id.* ¶ 8.) Superior Sales & Service operated a web site offering for sale various consumable commodities, including janitorial supplies, safety equipment, automobile detailing, and office supplies. (*Id.* ¶ 9.) Schlief terminated his employment with Nu-Source on July 13, 2010. (*Id.* ¶ 11.)

On November 5, 2010, Schlief initiated this action, alleging that he worked long hours as a warehouse worker, was misclassified as exempt from the Fair Labor Standards Act, and was denied overtime pay. In its Answer and Counterclaim, Nu-Source asserted twenty-five affirmative defenses and six counterclaims. The counterclaims relate to Nu-Source's allegations that Schlief removed confidential information from his Nu-Source computer and used that information to start a competing business. Schlief has moved to strike nine of the affirmative defenses and to dismiss all of the counterclaims.

## DISCUSSION

### I.   Motion to Dismiss Counterclaims

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 579 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls

for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Both parties submitted affidavits in support of their positions.  In addition to moving to dismiss each counterclaim, Schlief asserts that the undisputed facts, as set forth in his affidavit, establish that summary judgment is appropriate.  Schlief also contends that, because Nu-Source submitted its own affidavit in response, the Court must convert Schlief's motion into one for summary judgment.  The Court disagrees and declines to consider the submitted affidavits in ruling on Schlief's motion.  The Court has nevertheless reviewed the affidavits and concludes that consideration of the affidavits would not change the outcome.  Each of the counterclaims will now be addressed in turn.

### A.      Breach of Contract

Nu-Source's first counterclaim is for breach of contract.  Nu-Source alleges that Schlief breached the Confidential Information, Restrictive Covenant, and Bailment provisions of the Agreement.

### 1.  Confidential Information

Nu-Source alleges that Schlief breached the Agreement by "misappropriating and using Defendants' trade secrets and confidential information to start a competing business d/b/a Superior Sales and Service."  (Doc. No. 2, Countercls. ¶ 15.)  Schlief contends that Nu-Source's breach counterclaim as it relates to the confidentiality provision arises from Schlief's act of bringing his Nu-Source computer to a repair service and having the computer's data copied onto an external hard drive, and that Nu-Source has alleged no facts that show the computer contained confidential information or trade

secrets.  Schlief also contends that Nu-Source alleged no facts supporting the theory that Schlief used Nu-Source's trade secrets or confidential information to start his business. Nu-Source asserts that its allegation that "Plaintiff instructed the computer technicians to (1) copy all of the computer's data, including confidential company data, onto an external hard drive" does allege facts showing that the information on the computer was confidential.

The Court concludes that Nu-Source has failed to plead sufficient facts to state a claim for breach of the Agreement's confidentiality provision.  At a minimum, Nu-Source must plead facts identifying the type of Nu-Source confidential information that it alleges was copied from Schlief's Nu-Source computer to the external hard drive. The Court therefore dismisses without prejudice Nu-Source's breach of contract counterclaim to the extent that counterclaim is based on the Agreement's confidentiality provision.[2]

### 2.  Bailment

Nu-Source alleges that Schlief also breached the Agreement by "converting or destroying property owned by Defendant."  (Doc. No. 2, Countercls. ¶ 15.)  Schlief argues that Nu-Source has not alleged sufficient facts to support its claim and that the undisputed facts show that Schlief returned the computer and hard drive to Nu-Source and the computer was therefore not destroyed.

---

[2]   The Court grants Nu-Source thirty (30) days leave to amend those counterclaims that are dismissed without prejudice in this Memorandum Opinion and Order.

Nu-Source responds that Schlief breached the bailment clause if he failed to return the computer in the same condition as when tendered to Schlief and that it is not necessary for the computer to have been destroyed.  Nu-Source thus contends that its allegation that Schlief instructed the computer service company to "reformat the computer's hard drive (i.e., erase all of the computer's memory)" supports its counterclaim for breach of the bailment clause.  The Court agrees and therefore denies Schlief's motion as to Nu-Source's breach of contract counterclaim based on the bailment clause.[3]

### 3. Restrictive Covenant

Nu-Source alleges that Schlief also breached the Agreement by "operating a business d/b/a Superior Sales and Service, which competes with Defendant."  (Doc. No. 2, Countercls. ¶ 15.)  Schlief asserts that the Restrictive Covenant on which this allegation depends applies only in Arizona.  Schlief notes that the Restrictive Covenant prohibits certain activities "within the sales territory assigned" to Schlief.  Schlief contends that the Agreement defines his sales territory as Arizona.  He asserts therefore that Nu-Source's allegations that Schlief filed to do business in Minnesota and operated a website that sells items similar to Nu-Source's product line are not activities prohibited by the Agreement.

---

[3]     While Nu-Source's breach of contract counterclaim therefore remains viable at this time, the Court notes that little or no damages appear to be at issue here.

Nu-Source contends that the Restrictive Covenant is not limited to Arizona. Nu-Source attempts to distinguish between "Territory" as defined by the Agreement and "sales territory assigned" and argues that it is at least ambiguous as to whether or not "sales territory assigned" also includes New York and Minnesota.  In the alternative, Nu-Source argues that even if "sales territory assigned" is restricted to Arizona, other paragraphs within the Restrictive Covenant are not so limited.  Finally, Nu-Source asserts that by operating a website that offers products for sale "to anyone who places an order," Schlief is competing in Arizona.

The Court concludes that the Restrictive Covenant is limited to Arizona.  The Agreement states:  "1.  Definitions:  For purposes of this Agreement, the following definitions will apply:  A.  Territory:  Territory shall consist of that geographic area designated in Exhibit 'A' attached hereto and none other."  (Doc. No. 2, Ex. A ¶ 1.) Exhibit A to the Agreement then states:  "TERRITORY:  Arizona  ALL products sold by Nu-Source, Inc."  (Doc. No. 2, Ex. A, p. 18.)  The plain language of the Agreement thus defines "Territory" as Arizona "and none other."  The Court finds that when the Restrictive Covenant refers to the "sales territory assigned," it means the territory assigned in the Agreement, Arizona.

The Court also notes that while not every paragraph in the Restrictive Covenant contains language limiting application of that paragraph to the "Territory," the initial paragraph concludes with:  "[Schlief] will not conduct, engage in, be interested in or associated with any person or entity involved in any of the following prohibited activities

within the sales territory assigned to EMPLOYEE by Corporation." (Doc. No. 2, Ex. A

¶ 9(A).) Thus, each of the prohibitions in the Restrictive Covenant is limited to Arizona.

The Court concludes further that Nu-Source's allegation that Schlief competed in

Arizona by operating a website from Minnesota is insufficient as a matter of law to

constitute action in Arizona in violation of the Restrictive Covenant. The Court therefore

dismisses with prejudice Nu-Source's breach of contract counterclaim to the extent it is

based on an alleged breach of the Restrictive Covenant.

### B.      Breach of Duties of Loyalty and Confidentiality

Nu-Source next alleges that Schlief breached his duty of loyalty and duty of

confidentiality. Minnesota law imposes a duty of loyalty that prohibits an employee from

soliciting the employer's customers or otherwise competing with the employer while still

employed. *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. Ct. App.

1987). This duty does not prevent an employee from preparing to enter competition with

the employer while still employed. *Id.* The common law may also impose a duty of

confidentiality if an employee is given notice that material is confidential. *Josten's, Inc.*

*v. Nat'l Computer Sys., Inc.*, 318 N.W.2d 691, 702 (Minn. 1982). However, a claim that

asserts nothing more than misappropriation or misuse of a trade secret is displaced by the

Minnesota Trade Secrets Act. *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC,* 292

F. Supp. 2d 1173, 1179-80 (D. Minn. 2003).

Schlief asserts that Nu-Source's only factual allegations in support of this

counterclaim are that Schlief filed an assumed name to do business in Minnesota while

still employed by Nu-Source and solicited pricing information from a Nu-Source

11

supplier.  Nu-Source responds it has alleged that Schlief solicited pricing information

from a Nu-Source supplier, transferred the contents of his Nu-Source laptop to an

external hard drive, began operating a website selling similar products to those of

Nu-Source, and used Nu-Source's confidential information to start a competing business

and retained that information following his termination.  Nu-Source contends that these

allegations provide sufficient facts to state a plausible breach of Schlief's duty of loyalty

and confidentiality.

The Court concludes that Nu-Source has not plead sufficient facts to raise a right

to relief above a speculative level on its claim for breach of a duty of loyalty.  Nu-Source

has not plead facts showing any customers solicited by Schlief or any other competition

with Nu-Source engaged in by Schlief during his employment with Nu-Source.  The

Court therefore dismisses without prejudice Nu-Source's counterclaim for breach of the

duty of loyalty.

The Court concludes further that Nu-Source's counterclaim for breach of the duty

of confidentiality is nothing more than a claim for misappropriation of trade secrets.

Such a claim must be brought under the Minnesota Trade Secrets Act.  Nu-Source's

counterclaim for breach of the duty of confidentiality is therefore dismissed with

prejudice.

### C.    Civil Theft Pursuant to Minn. Stat. § 604.14

Nu-Source next alleges that Schlief committed civil theft.  Minn. Stat. § 604.14

provides that one "who steals personal property from another is civilly liable to the owner

of the property."  Minn. Stat. § 604.14 subd. 1.  Nu-Source alleges that Schlief's act of

copying all of the data from his Nu-Source laptop onto an external hard drive supports this counterclaim.  Schlief asserts that since he returned the laptop and the hard drive to Nu-Source, the civil theft counterclaim fails.

The Court concludes that Nu-Source's pleading with respect to its civil theft counterclaim is conclusory.  Nu-Source's allegation appears to be based on its theory that Schlief retained the information removed from the laptop.  Nu-Source has not, however, plead facts identifying the information or supporting its theory that Schlief actually retained the information and used it to start his business.  The Court therefore dismisses without prejudice Nu-Source's civil theft counterclaim.

### D.    Violation of the Arizona and Minnesota Trade Secrets Acts

Nu-Source next alleges that Schlief violated the Arizona and Minnesota Trade Secrets Acts.  Both acts define a trade secret as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Ariz. Rev. Stat. § 44-401.4; Minn. Stat. § 325C.01, subd. 5.

Schlief asserts that Nu-Source has not set forth facts to show that the information from the Nu-Source computer satisfies the definition of a trade secret.  Schlief also asserts that Nu-Source has made no specific factual allegations about Schlief's alleged misappropriation of a trade secret.  Nu-Source responds that it specifically alleged that the computer contained trade secrets and other confidential information, including

customer lists and pricing information, and that Schlief wrongfully retained or used the information to start a competing business.

The Court concludes that Nu-Source has not plead sufficient facts for its Trade Secret Act counterclaim to survive Schlief's motion to dismiss. Nu-Source pleads merely that "Plaintiff gained access to Defendants' trade secrets and other confidential, competitive and proprietary information belonging to Defendant, including but not limited to, Defendant's customer and price lists." (Doc. No. 2, Countercls. ¶ 29.) This threadbare recital does not satisfy the standard set forth by the Supreme Court in *Twombly* and *Iqbal*. Nu-Source's counterclaim for breach of the Arizona and Minnesota Trade Secret Acts is therefore dismissed without prejudice.

### E.     Unfair Competition and Unjust Enrichment

Nu-Source next asserts a counterclaim for unfair competition and unjust enrichment. Unfair competition is not a tort with specific elements, but instead describes a general category of torts that courts recognize to protect commercial interests. *Rehab. Specialists*, 404 N.W.2d at 305-06. Unfair competition can cover claims such as tortious interference with contract, misuse of trade secrets, and an employee's breach of their fiduciary duties. *See id.* However, a claim that asserts nothing more than misappropriation or misuse of a trade secret is displaced by the Minnesota Trade Secrets Act. *SL Montevideo Tech.*, 292 F. Supp. 2d at 1179-80. A claim for unjust enrichment requires that Schlief "knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention."

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.,* 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).

Schlief asserts that Nu-Source's pleading here contains no more than a recitation of legal arguments.  Nu-Source responds that its unjust enrichment counterclaim is supported by the allegations regarding Schlief's copying the contents of his Nu-Source computer to an external hard drive and that the same wrongful conduct provides the basis for its unfair competition counterclaim.

The Court concludes that these counterclaims assert nothing more than misappropriation of a trade secret and are consequently displaced by the Minnesota Trade Secret Act.  The Court therefore dismisses with prejudice Nu-Source's unfair competition and unjust enrichment counterclaims.

**F.      Tortious Interference with Contractual and Business Relations**

Nu-Source's sixth and final counterclaim is for tortious interference with contractual and business relations.  It is unclear whether Nu-Source here alleges tortious interference with contract or tortious interference with prospective contractual relations.  A claim for tortious interference with contract requires the existence of a contract, the alleged wrongdoer's knowledge of the contract, and an intentional procurement of its breach, without justification, that results in damage to the plaintiff.  *Maness v. Star-Kist Foods, Inc*., 7 F.3d 704, 709 (8th Cir. 1993) (citing *Furlev Sales and Assocs., Inc. v. North American Auto. Warehouse, Inc*., 325 N.W.2d 20, 25 (Minn. 1982)).  A claim for tortious interference with prospective contractual relations requires that a defendant

intentionally and improperly interfered with the plaintiff's prospective business relations. *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632-33 (Minn. 1982).

Schlief asserts that Nu-Source has made no allegations about any contractual or business relations with which Schlief allegedly interfered.  Nu-Source responds that its allegations that Schlief operated a website selling competing products and attempted to purchase goods from one of Nu-Source's suppliers are sufficient to state a plausible tortious interference claim.  The Court disagrees.  Nu-Source has failed to identify a single contract or prospective business relation with which Schlief allegedly interfered.  Nu-Source's tortious interference counterclaim is therefore dismissed without prejudice.

## II.      Motion to Strike Affirmative Defenses

Schlief moves to strike Nu-Source's third, sixth, seventh, eighth, twelfth, thirteenth, fourteenth, sixteenth, and twenty-third affirmative defenses pursuant to Fed. R. Civ. P. 12(f).  Rule 12(f) states, in pertinent part, that: "Upon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A district court enjoys "liberal discretion" under this rule.  *Stanbury Law Firm, P.A. v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000).  However, striking a party's pleadings "is an extreme measure," and motions to strike under Rule 12(f) "are viewed with disfavor and infrequently granted."  *Id.*  "A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear."  *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977) (quoting 2A *Moore's Federal Practice* para. 12.21 at 2437 (2d ed. 1975)).

Schlief assets that the pleading standard set forth in *Twombly* and *Iqbal* should also apply to affirmative defenses.  Schlief acknowledges that no circuit court has yet ruled that *Twombly* and *Iqbal* apply to affirmative defenses, but asserts that the plausibility standard was applied in this district in *Ahle v. Veracity Research Co.*, No. 09-cv-0042 (ADM/RLE), 2010 WL 3463513 (D. Minn. Aug. 25, 2010).  Schlief also contends that unnecessary discovery and unnecessary motion practice will follow unless the challenged affirmative defenses are stricken.  Schlief argues that applying *Twombly* and *Iqbal* to affirmative defenses will therefore result in a more efficient proceeding for the parties, the Court, and the jury.

In the alternative, Schlief argues that even if *Twombly* and *Iqbal* do not apply, Nu-Source's seventh and thirteenth defenses should be stricken.  In its seventh affirmative defense, Nu-Source asserts that "Plaintiff's claims are barred, in whole or in part, because they failed to exhaust internal and/or administrative remedies."  Schlief argues that none of Schlief's claims are subject to an exhaustion of administrative remedies requirement and thus this defense fails as a matter of law.  Nu-Source's thirteenth affirmative defense states, "Plaintiff's claims for unjust enrichment, injunctive relief and other equitable relief are barred because Plaintiff has an adequate and complete remedy at law."  Schlief contends that none of his claims are equitable in nature and he has made no demand for injunctive relief and that therefore Nu-Source's thirteenth defense should be stricken.

Nu-Source responds that *Twombly* and *Iqbal* do not apply to affirmative defenses. Nu-Source acknowledges that district courts have split on this issue, but argues that,

contrary to Schlief's assertions, *Twombly* and *Iqbal* were not applied in *Ahle*.  Nu-Source

also notes that application of *Twombly* and *Iqbal* to affirmative defenses was expressly

rejected in this district in *Wells Fargo & Co. v. United States*, --- F. Supp. 2d ---,

2010 WL 4530158 (D. Minn. Oct 27, 2010).

The Court concludes that the pleading standard set forth in *Twombly* and *Iqbal*

does not apply to affirmative defenses.  The language in Fed. R. Civ. P. 8(a) that

provided the basis for the Supreme Court's decisions does not appear in Rule 8(b) or 8(c),

which govern defenses.  *Wells Fargo*, 2010 WL 4530158, at *2.  In addition, a defendant

typically has only 21 days in which to serve an answer to a complaint and is therefore in a

much different position from that of a plaintiff.  *Id.*  Application of *Twombly* and *Iqbal* to

affirmative defenses would significantly change federal civil practice and likely increase

the burden on the federal courts.  *Id.*

The Court therefore denies Schlief's motion to strike as to Nu-Source's third,

sixth, eighth, twelfth, fourteenth, sixteenth, and twenty-third affirmative defenses.[4]  The

Court concludes, however, that Nu-Source's seventh defense is insufficient as a matter of

law and therefore grants Schlief's motion as to that defense.  The Court also concludes

---

[4]      The Court does not reach the issue of whether or not Nu-Source's pleading
satisfies *Twombly* and *Iqbal* with respect to these defenses.

that Nu-Source's thirteenth defense is immaterial and thus grants Schlief's motion to strike as to that defense.[5]

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Schlief's Motion to Strike Affirmative Defenses (Doc. No. [13]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

     a.     Schlief's motion to strike Nu-Source's seventh affirmative defense is **GRANTED**;

     b.     Schlief's motion to strike Nu-Source's thirteenth affirmative defense is **GRANTED**; and

     c.     Schlief's motion to strike is **DENIED** as to Nu-Source's third, sixth, eighth, twelfth, fourteenth, sixteenth, and twenty-third affirmative defenses.

2. Schlief's Amended Motion to Dismiss or for Summary Judgment on Defendant's Counterclaims (Doc. No. [18]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

     a.     Nu-Source's counterclaims for breach of contract as it relates to the Restrictive Covenant provision of the Agreement, breach of duty of

_____

[5] The Court acknowledges that it may need to address at summary judgment or as an evidentiary or pretrial issue the viability of Nu-Source's twenty-three remaining affirmative defenses.

confidentiality, and unfair competition and unjust enrichment are

**DISMISSED WITH PREJUDICE**.

      b.     Nu-Source's counterclaims for breach of contract as it relates
to the Confidential Information provision of the Agreement, breach of duty
of loyalty, civil theft, violation of the Arizona and Minnesota Trade Secrets
Acts, and tortious interference with contractual and business relations are
**DISMISSED WITHOUT PREJUDICE**; Nu-Source has thirty (30) days
from the date of the filing of this Order to amend the Answer and
Counterclaims to plead these counterclaims with sufficient factual
allegations to satisfy the pleading standard set forth in *Twombly* and *Iqbal*.


Dated:  April 25, 2011               <u>s/Donovan W. Frank</u>
                                  DONOVAN W. FRANK
                                  United States District Judge